WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald L. Vertin,<br><br>    Plaintiff,<br><br>v.<br><br>Terry L Goddard, Former Attorney General of the State of Arizona; et al.,<br><br>    Defendants. | No. CV-11-01167-PHX-GMS<br><br>**ORDER** |

   Pending before the Court is the Ninth Circuit's reversal and remand of this Court's order dismissing Plaintiff Ronald L. Vertin's action. (Doc. 25-1).   For the reasons discussed below, the matter is reinstated as to Defendants Jennifer Pinnow, City of Avondale, and State of Arizona. Plaintiff is allowed to move for leave to file and serve an amended complaint. Accordingly, Plaintiff's "First Amended Complaint" (Doc. 26.) is stricken.

**BACKGROUND**

   Plaintiff Ronald L. Vertin ("Vertin"), pro se, filed his Original Complaint against seven defendants on June 13, 2011. (Doc. 1)  In his Complaint, Vertin alleges a variety of civil rights claims under 42 U.S.C. § 1983 based on the State's seizure of his property in 2004 and its subsequent forfeiture in 2008. (Doc. 1 ¶ 27.) On September 19, 2011, Vertin filed an Amended Complaint that restated his claims with greater specificity and dropped his claim against the former Arizona Attorney General Terry Goddard. (Doc. 3.) This Amended Complaint continues to assert claims against the remaining six defendants: the

State of Arizona, Arizona Assistant Attorneys General Nelson and Johnson, the City of Avondale, and Avondale Detectives Pinniow (sic) and Smith. Vertin did not serve these defendants with either the Original Complaint or the Amended Complaint within the 120 day period required by Rule 4(m) of the Federal Rules of Civil Procedure. Instead, Vertin filed, without leave from this Court, a Second Amended Complaint on October 13, 2011. (Doc. 4.)

On October 27, 2011, this Court issued an order directing Vertin to show, within fourteen days, good cause as to why his claim should not be terminated for failure to serve the defendants within the time required by Rule 4(m). (Doc. 5.) The Court also directed Vertin to show why his Second Amended Complaint should not be stricken for failure to comply with Rule 15 of the Federal Rules of Civil Procedure and Arizona Local Rule 15.1. On November 10, 2011, Vertin filed six documents in an apparent attempt to show good cause. Three of these documents showed that Vertin had successfully served defendants Pinnow, City of Avondale, and State of Arizona with his Second Amended Complaint on November 7 and 8, 2011. (Docs. 6–8.) The remaining documents showed that Vertin had attempted service as to the other defendants, but that service had not been executed. (Docs. 9–11.) Finding these six filings insufficient to demonstrate good cause, this Court dismissed Vertin's action without prejudice on November 17, 2011. (Doc. 15.)

Vertin then moved to amend the judgment on December 12, 2011, (Docs. 17, 18.) which this Court denied. (Doc. 19.) Vertin promptly appealed to the Ninth Circuit (Doc. 20.), which reversed this Court's dismissal as an abuse of discretion and remanded the case for reconsideration of the decision to dismiss. (Doc. 25.)

## DISCUSSION

### A.    Legal Standard

When a plaintiff fails to serve process on a defendant within 120 days of filing the complaint, Rule 4(m) provides either that the complaint must be dismissed, or, if the plaintiff shows good cause for the failure, "the district court must extend time for service" for an appropriate period. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). Even if the plaintiff fails to show good cause, the district court may also, in its

discretion, "extend time for service upon a showing of excusable neglect." *Id.* The court is required to engage in this two-step analysis to determine (1) whether there is excusable neglect and (2) if that excusable neglect rises to the level of good cause. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).

The excusable neglect analysis contains at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394 (1993). (adopted by the Ninth Circuit in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997)). A district court must explicitly apply all four of the *Pioneer/Briones* factors when determining whether a plaintiff's failure to meet a court-ordered deadline constitutes excusable neglect. *Lemoge*, 587 F.3d at 1192. As a general rule, excusable neglect encompasses negligence and carelessness. *Id.* However, the court's analysis regarding "what sort of neglect will be considered 'excusable . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. *Pioneer*, 707 U.S. at 396.

In some instances, excusable neglect alone may be sufficient to establish good cause. *Lemoge*, 587 F.3d at 1198 n.3 (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)).  But, for the most part courts consider three factors in addition to excusable neglect, to determine whether good cause exists.  These factors include whether: "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923 F.2d 754,756 (9th Cir. 1991). If the court finds that the plaintiff has established excusable neglect, but failed to show good cause, the court may dismiss the claim. Upon a showing of good cause, however, relief under 4(m) is mandatory. *Lemoge*, 587 F.3d at 1198; *In re Sheehan*, 253 F.3d at 512.

Further, in deciding whether to dismiss a claim for failure to comply with a court order, the court must determine if certain "relevant factors" weigh in favor of dismissal. *Pataglunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). The five *Pataglunan* factors

are: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits. *Id.*

### B.    Analysis

Courts must address explicitly each prong of the 4(m) analysis. However, because excusable neglect is both a grounds for discretionary extension of time, and potentially sufficient grounds for mandatory extension, the two prongs are easy to conflate. *See Golf Savings Bank v. Walsh*, 2010 WL 3222112, at *3 (D. Or. Aug. 13, 2010). Courts generally assume for the purposes of the good cause inquiry the presence of excusable neglect and, then, having concluded its assessment of the good cause factors, proceeds to the excusable neglect inquiry. *See Trueman v. Johnson* 2011 WL 6721327 (2011). In the interest of simplicity and clarity of analysis, however, this Court will analyze first whether excusable neglect exists, and then determine whether Vertin has demonstrated any factors raising his excuse to the level of good cause.

### 1.    Excusable Neglect

Upon a showing of excusable neglect, Rule 4(m) permits, but does not require, "a district court to grant an extension of time to serve the complaint after th[e] 120-day period." *Trueman*, 2011 WL 671327 at *5 (quoting *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007)) (emphasis omitted).

### a.    *Pioneer/Briones* Factors

### i.    Prejudice to Opposing Party

The lack of prejudice to Defendants weighs in favor of finding excusable neglect. Although Defendants would prefer to avoid litigation on the merits by having the claim dismissed, Defendants' loss of a "quick victory is not sufficiently prejudicial to deny [the plaintiff] relief." *Trueman*, 2011 WL 6721327 at *3 (citing *Bateman v. United States Postal Service*, 231 F.3d 1220, 1225 (9th Cir. 2000)).  Thus, none of the six Defendants would suffer any cognizable prejudice from extending Vertin additional time to serve.

### ii.    Length of Delay and its Impact on Proceedings

- 4 -

Both the length of delay and its impact on proceedings are minimal, which supports a finding of excusable neglect. Particularly with pro se plaintiffs, an extension of time to serve for a few months beyond the required 120-day period is not impermissibly lengthy. Compare *Trueman*, 2011 WL 6721327 at *6 (finding that a two month extension has a minimal impact on proceedings in which no defendant has been served) with *Halloum v. Ryan*, 2011 WL 5572622 (D. Ariz. Sept. 21, 2011) (dismissing without prejudice where the time for filing expired nine months prior to the order to show cause and the case was nearing completion). Moreover, an action that is "in its infancy," such that no defendants have been served and no scheduling orders have been entered, is generally *not* adversely impacted by such a delay in litigation. *Id.* at *6–7.

Here, the period between when the 120-day period expired and when the Court dismissed Vertin's claim was only two months. This relatively short delay is further mitigated by the "infancy" of Vertin's claim, which did not proceed past his filing of a Complaint. Thus, this factor weighs in favor of finding excusable neglect.

### iii.    Reason for Delay

Vertin failed to offer any reason for his delay in response to this Court's Order to show cause. In support of his motion to amend the judgment, Vertin alleges that he asked the process server to delay service until Vertin could file a Second Amended Complaint, which would correct some "clerical errors" in the First Amended Complaint. (Doc. 17 ¶ 6.)  Although ignorance of court rules typically does not constitute excusable neglect, a pro se plaintiff's failure to comply with rules of procedure may be excused by negligence if the court finds that plaintiff's failure to comply resulted from more than just his failure to "read and attempt to follow court rules." *Briones*, 116 F.3d at 382 (holding that a pro se plaintiff's failure to respond that was partly caused by a communication error with his assistants could be considered excusable neglect). In other words, a pro se plaintiff's negligence is excusable if the court also finds that it was the product of a "good-faith mistake." *Lemoge*, 587 F.3d 1188 at 1197.

This is a close call. Vertin has not alleged that his failure to timely serve the six Defendants was caused by anything but his desire to amend his Complaint for a second

time. In fact, Vertin's references to the "120th day" and asking the process server to "hold service" suggest that he was at least aware of Rule 4(m)'s service requirements and time constraints.  Further, Vertin was never given leave to file the Second Amended Complaint, and never provided any justification as to why it should not be stricken. Vertin was given notice by this Court that he should provide a reason why the Second Amended Complaint should not be stricken before he actually served it on those Defendants that he did serve.  He never did so, although he did subsequently serve three of the Defendants with the Second Amended Complaint. (Doc. 17 ¶ 6.)    However, in light of Vertin's pro se status and because he was apparently acting in good faith, Vertin has provided an adequate reason for his delay.

### iv.    Good Faith

There is no evidence that Vertin acted in bad faith. Delays resulting from "deviousness or willfulness" on the part of the plaintiff may be bad faith, but delays caused by pure negligence typically are not. *Bateman*, 231 F.3d at 1225. While he was wrong about the procedural requirements for filing and serving a complaint in federal court, Vertin, a pro se plaintiff, did not demonstrate any evidence of bad faith. Like the previous three factors, the final *Pioneer/Briones* factor also weighs in favor of a finding of excusable neglect as to the three defendants he did in fact serve. Because Vertin entirely failed to serve the remaining three defendants and failed to demonstrate any good-faith attempts to achieve proper service (or explain his neglect), this court cannot find excusable neglect as to the three un-served defendants.  Thus, only Vertin's failure to serve Defendants Jennifer Pinnow, City of Avondale, and State of Arizona within the 120-day required by Rule 4(m) constitutes excusable neglect.

### 2.    Good Cause

The good cause analysis is always conducted on a case-by-case basis. *In re Sheehan*, 253 F.3d at 512. However, the Ninth Circuit has generally "interpreted 'good cause' to exclude mistakes of counsel and the desire to amend a complaint before service." *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985). Vertin alleged in his Motion to Amend Judgment that he had failed to timely serve because he intentionally

delayed service in order to file his Second Amended Complaint, which also was filed without leave from this Court.[1] (Doc. 17 ¶ 6.) As this Court has previously indicated in its Order denying Vertin's motion (Doc. 19.), his desire to amend his complaint in the final days of the 120-day period allotted under Rule 4(m) was insufficient to overturn the dismissal for failure to show good cause. Thus, assuming for the time being the existence of excusable neglect, the court must examine whether Vertin has alleged any of the three additional *Boudette* factors that would raise his (presumed) excuse to the level of good cause. *See Boudette*, 923 F.2d at 756.

### a.    Actual Notice

Actual notice requires that defendants who have not been served with process demonstrate in some way that they personally received actual notice of the complaint during the 120-day period. *Lemoge*, 587 F.3d at 1198 (quoting *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991)). Typically, defendants who have appeared in or in some way contacted the court sufficiently demonstrate that they have personally received actual notice of the lawsuit. *Trueman*, 2011 WL 6721327 at *3. None of the defendants contacted this Court during or after the 120-day period between June and October 2011. After the required twenty day period, on November 7 and 8, 2011, Plaintiff served what purports to be his Second Amended Complaint on Defendants Pinnow, Avondale, and Arizona.   Nevertheless, the service came after the required 120-day period, and the Second Amended Complaint was not operative because, pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff was required to obtain leave of this Court prior to filing this Second Amended Complaint which he never sought nor received.   Thus, although the Pinnow, Avondale and state Defendants may have been aware that Plaintiff desired to file a lawsuit against them, they did not personally receive actual notice within the 120 day period required under 4(m), which expired on October 11, 2011. The remaining defendants were, to the Court's knowledge, never properly served. (Docs. 9–11.)

---

[1] Vertin's Motion to Amend Judgment was not filed within the 14 day period required by the Court in its Order to Show Cause. However, in keeping with the Ninth Circuit's implicit urgings to give Vertin, a pro se plaintiff, the benefit of the doubt, this Court will consider any allegations and explanations contained in Vertin's Motion.

Because the defendants did not demonstrate personal receipt of actual notice during the relevant period, this factor does not weigh in favor of a finding of good cause.

### b.  Prejudice to Defendants

As discussed previously in the excusable neglect context, the absence of prejudice to the defendants in this case supports a finding of good cause.  Nonetheless, a "[l]ack of prejudice by itself is not sufficient to establish good cause." *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 773 n.2 (9th Cir. 2004). Thus, the only prejudice to the Defendants is their loss of a 'quick victory,' and, while Defendant's loss of a quick victory is insufficient to deny relief to the Plaintiff, it is also insufficient to definitively establish good cause.

### c.  Prejudice to Plaintiff

"A dismissal for untimely service is required to be a dismissal without prejudice." *2,164 Watches,* 366 F.3d at 773. However, a dismissal that is nominally "without prejudice" can become prejudicial to the plaintiff when the statute of limitations would bar refiling. *See Trueman*, 2011 WL 6721327 at *4 (finding severe prejudice to plaintiff where the statute of limitations would prevent refiling of his § 1983 claim).

As indicated in this court's two previous orders (Docs. 5, 19.), there appears to be some question as to whether the statute of limitations had already run on Vertin's various civil rights claims at the time he filed his original Complaint. (Doc. 19.) According to Vertin's First Amended Complaint, Defendants committed the alleged constitutional violations prior to the superior court's Order of Forfeiture, apparently dated September 3, 2009. (Doc. 3 ¶ 41.) Moreover, the bulk of Vertin's First Amended Complaint focuses on events between 2002 and 2004. (Doc. 3 ¶¶ 8–35.) Assuming that Vertin has accurately stated the relevant dates, the statute of limitations appears to have run on his § 1983 claims. If Vertin's claims were already untimely when he filed his first Complaint in June 2011, then dismissing his claim for failure to serve, inflicts no additional prejudice on Vertin.

Even presuming that  the statute of limitations had not expired when Vertin filed his first Complaint in June 2011, Vertin also fails to allege facts sufficient to state a claim

under § 1983 or any other federal or state law that he has cited in his First Amended Complaint. [2] (Doc. 3.) Vertin alleges that defendants conspired to take his property and did so using search warrants obtained through "innuendo and distortions of fact." (Doc. 3 ¶¶ 7–8, 20.) However, Vertin also concedes that search warrants were obtained, the State of Arizona filed a seizure action in Maricopa County Superior Court, which issued an Order of Forfeiture in September 2009. (Doc. 3 ¶¶ 20, 34, 41.) The validity of the State's seizure of Vertin's property should have been litigated in the superior court action. Besides vague references to his constitutional rights to apportionment and compensation (Doc. 3 ¶¶ 8, 39–40.), Vertin fails to allege with any specificity which of his federal rights Defendants violated, and how. Without a meritorious claim, dismissal of Vertin's claim for failure to serve would not cause him undue prejudice. Thus, like the actual notice requirement, the potential for undue prejudice to the plaintiff is not so great as to warrant mandatory extension for good cause.

Vertin has not alleged, nor could this court uncover, sufficient facts to support a finding of good cause. Because this court's analysis of the three factors does not clearly support a finding of good cause, extension of time to serve is not mandatory.

### C.   *Pagtalunan* Factors

When a court finds that excusable neglect exists, but that good cause does not, dismissal is discretionary. The Ninth Circuit has laid out five additional (but somewhat duplicative) factors that a court should consider when deciding whether to dismiss a case for failure to comply with a court order. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). "The court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Id.*

Because public policy favors disposition of cases on the merits, the Ninth Circuit

---

[2] "To state a claim for relief in an action brought under § 1983, [plaintiffs] must [allege] that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

has held that this factor always weighs against dismissal. *Hernandez v. City of El Monte,* 138 F.3d 393, 399 (9th Cir.1998). Conversely, the Ninth Circuit has previously held that "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier,* 191 F.3d 983, 990 (9th Cir.1999). Thus, these two factors are essentially a wash.

The second factor, docket management, weighs heavily in favor of dismissal. The Ninth Circuit has left this determination to the sound discretion of the trial judge. *See Yourish,* 191 F.3d at 990 ("The trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest."). The current caseload of federal district court judges absolutely requires expeditious and efficient resolution of cases. (Doc. 19.)

As previously discussed under the good cause and excusable neglect analyses, the fourth factor, risk of prejudice to the defendants, is not at issue here. Vertin's failure to timely serve process did not interfere with any of "the defendant's ability to proceed to trial or threaten[] to interfere with the rightful decision of the case" because, as previously stated, defendants had no actual knowledge of the suit. *See Pagtalunan,* 291 F.3d at 643 (citing *Malone v. United States Postal Serv.,* 833 F.2d 128, 131 (9th Cir. 1987)). The lack of prejudice to defendants also weighs, if at all, in favor of dismissal.

The third factor, relating to the availability of less drastic alternatives, weighs just slightly against dismissal. The crux of this requirement is that the court, in addition to any leniency already shown, considers less drastic alternatives after the plaintiff has disobeyed the court's order. *See Yourish,* 191 F.3d at 992. In this way, this factor correlates closely to the third factor of the good cause analysis, namely, prejudice to the plaintiff. *See Trueman,* 2011 WL 6721327 *7-8 (discussing prejudice to plaintiff). As previously discussed, dismissal of the claim presents some possibility of prejudice to Vertin, who would be unable to litigate on the merits if the underlying claim was time-barred. While this Court has some doubt that Vertin has alleged facts sufficient to state a claim under § 1983, having determined that Vertin showed excusable neglect in his failure to timely serve, the Court finds that the Pataglunan factors weigh against dismissal

in this case.

### D.    Vertin's Third Amended Complaint

In the period between the Ninth Circuit's Mandate (Doc. 25.) and this Order, Vertin filed another amended complaint, again without leave of court. (Doc. 26.) While this complaint is named "First Amended Complaint," it is in fact Vertin's third amended complaint to date, and his second consecutive complaint that he has filed without leave. Because Vertin filed this complaint without first moving for leave to amend as required by Rule 15 of the Federal Rules of Civil Procedure and Arizona Local Rule 15.1, the (third) First Amended Complaint is stricken.

### CONCLUSION

Because this Court finds that Vertin has demonstrated excusable neglect in his failure to timely serve three of the six named defendants with a valid complaint, the Court, in its discretion, hereby reinstates Vertin's claim against the three defendants who were served: Jennifer Pinnow, City of Avondale, and the State of Arizona. Vertin will be granted leave to file an amended complaint. In so doing, Vertin is advised to pay close attention to the filing and service requirements of the Federal Rules of Civil Procedure and the Arizona Local Rules.

**IT IS THEREFORE ORDERED** that Plaintiff Ronald L. Vertin's claim be reinstated as to Jennifer Pinnow, City of Avondale, and the State of Arizona.

**IT IS FURTHER ORDERED** directing the Clerk of Court to strike Vertin's "First Amended Complaint" (Doc. 26.).

**IT IS FURTHER ORDERED** that Vertin shall have **fourteen (14) days** from the date of this Order to move for leave to file a (third) amended complaint.

Dated this 8th day of May, 2013.

G. Murray Snow
United States District Judge